UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

CHRIS ALEXANDER
ZELAYA-PADILLA,

    Petitioner,

v.

PHILLIP VALDEZ, et al.,

    Respondents.

No. 6:26-CV-105-H

## ORDER OF DISMISSAL
## AND ORDER TO SHOW CAUSE

Chris Alexander Zelaya-Padilla sought a writ of habeas corpus from this Court to challenge his detention during the course of pre-removal proceedings. Dkt. No. 1. Zelaya-Padilla is represented by local counsel Muhammed Gulen, as well as Paul A. Pirela, a Houston attorney whose pro hac vice application (Dkt. No. 2) is pending with the Court.

On April 24, 2026, the petitioner filed a Notice of Voluntary Dismissal Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). Dkt. No. 6. The notice asserted that the respondents "ha[d] resolved the causes of action in [Zelaya-Padilla's] favor and ha[d] stipulated to dismissal." *Id.* at 1. Given that Zelaya-Padilla sought "immediate release from ICE custody," the notice suggested that, in fact, the respondents had stipulated with Zelaya-Padilla to release him during the pendency of his removal proceedings. *See* Dkt. No. 1 at 23–24.

Upon review of the petition and the notice, the Court became concerned. The respondents have been vigorous in enforcing a regime of detaining aliens like Zelaya-Padilla without bond. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 508 (5th Cir. 2026) (Douglas, J., dissenting) (noting that up to 2 million aliens may fall within this category). While the

respondents do occasionally release alien petitioners without judicial intervention, this sudden change of course in a petition that failed to raise distinct issues from this Court's many prior denials of habeas relief was notable. The notice also asserted that the respondents had stipulated to this action, even though no attorney for the respondents had entered an appearance in this case and even though no counsel for respondents had signed onto the notice. *See* Dkt. No. 6 at 2.

The Court recognized these discrepancies as raising a possibility, albeit remote, that counsel's representations were not truthful. Acting out of an abundance of caution, the Court accessed ICE's Online Detainee Locator System and inserted Zelaya-Padilla's country of birth and alien number. The locator system then revealed that Zelaya-Padila was not, in fact, released, but was now detained in a New Mexico detention center. Dkt. No. 7 at 1.

The apparent contradiction between that information and what counsel represented in the notice raised alarm. The Court therefore ordered counsel to "file a response . . . addressing whether Zelaya-Padilla ha[d] been released from ICE custody and whether the respondents ha[d], in fact, stipulated to dismissal as represented in the notice." *Id.* at 2.

Counsel have responded, and their response is less than assuring. Counsel first downplays the implicit assertion of their client's release as a "mistake[]." Dkt. No. 8 at 2. What they really implied by "resolved . . . in [Zelaya-Padilla's] favor" was that he was now in a more favorable district for litigation and would much rather pursue his petition elsewhere. *See* Dkt. No. 6 at 1. And as for that ambiguous phrase "stipulated to dismissal"—counsel recognizes that this could have "mistakenly [given] the Court the impression that . . . the [respondents] had agreed to jointly dismiss this suit." Dkt. No. 8 at

2. Rather, the respondents were apparently unaware of the pending petition, as no show-cause order had issued. *See id.* at 3. When informed of the notice, the respondents indicated to counsel that they opposed dismissal of the case. Dkt. No. 8-1 at 2.

Even though opposing counsel has not entered an appearance in this case, the Court notes that this notice is opposed. However, the respondents have not filed an answer to the petition or moved for summary judgment. In these circumstances, a "notice of dismissal is self-effectuating and terminates the case in and of itself; no order or other action of the district court is required." *Bechuck v. Home Depot U.S.A., Inc.*, 814 F.3d 287, 291 (5th Cir. 2016) (quotation omitted); *see* Fed. R. Civ. P. 41(a)(1)(A)(i). Thus, the Court dismisses the petition without prejudice. *See* Dkt. No. 1.

That is not the end of the road for counsel, however. A notice of voluntary dismissal does not deprive the Court of its inherent power to sanction attorneys for misconduct. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 394–95 (1990). Had counsel filed a boilerplate notice, there would be nothing more to say. Instead, counsel made two false representations: (1) that the respondents "ha[d] resolved the causes of action in [Zelaya-Padilla's] favor" and (2) that the respondents "stipulated to dismissal." Dkt. No. 6 at 1. Based on these statements, the Court is concerned that counsel have violated their duty of candor to the Court in violation of Texas Disciplinary Rule of Professional Conduct 3.03 and Federal Rule of Civil Procedure 11(b).

Rule 3.03 requires attorneys to act with a duty of candor. It is a "necessary corollary to [the] law" that "a lawyer's conduct, both with respect to the court and to other lawyers, should at all times be characterized by honesty and fair play." *Dondi Props. Corp. v. Com. Sav. & Loan Ass'n*, 121 F.R.D. 284, 289 (N.D. Tex. 1988) (en banc). "[B]road[ly]"

described, that rule requires attorneys to "disclose material facts; especially, a lawyer's duty not to allow a tribunal to be misled by false statements, either of law or fact, that a lawyer knows to be false." *In re Ethics Investigation of Allegations Raised by UDF*, No. 4:22-MC-01, 2023 WL 3327251, at *24 (N.D. Tex. Feb. 6, 2023) (quotation omitted), *R. & R. adopted*, 2023 WL 3322586 (May 9, 2023). "Most legal authors and scholars would also include that it is a lawyer's duty not only to be honest but also not to mislead or allow a court to be misled by half-truths or statements which, while technically honest, are calculated to mislead." *Id.* In Texas's ethics code, this is reflected by the basic requirement that "[a] lawyer shall not knowingly . . . make a false statement of material fact or law to a tribunal." Tex. Disciplinary R. of Prof. Conduct 3.03(a)(1).

The Court is not persuaded by counsel's characterization of these statements as mere oversights. And one cannot "further clarify" what is flatly untrue. *See* Dkt. No. 8 at 2. While no document, whatever its complexity or size, is so tangled as to excuse a material misrepresentation, these two misrepresentations arose in the space of a single sentence in a two-sentence document. *See* Dkt. No. 6. The Court recognizes that, at day's end, these misrepresentations did not affect the disposition of the case. But the Court rightly expects counsel to behave in an honest manner so that the Court may presume that the parties' disputes are the product of intelligent and honest disagreement about the law governing the case or the relevant facts therein. When an attorney lies—even if it is a small lie—it greatly erodes that trust and requires the Court to look on counsel's future representations with suspicion.

Next is Rule 11(b)(3). That rule requires counsel to "certif[y] that to the best of [their] knowledge, information, and belief, formed after an inquiry reasonable under the

–4–

circumstances," that "the factual contentions [in the filing] have evidentiary support." If the duty of candor is a duty of honesty, then Rule 11(b)(3) is a duty to avoid indifference to the truth. "A lawyer owes, to the judiciary, candor, diligence, and utmost respect." *Dondi*, 121 F.R.D. at 287. This duty overlaps to a great degree with the duty of candor, because the harms created by lies are often the same as those created by making claims with an indifference to the truth. A lawyer owes to the Court—and to himself—both "personal dignity and professional integrity." *Id.* at 287–88. And it is hard to see how a lawyer can maintain either if he files statements without confirming that they are true statements.

While the Court did not demand that opposing counsel explain the reason for these errors, counsel have already said much. They say that the assertion regarding the stipulation "was included in error and was admittedly a clerical error and an oversight." Dkt. No. 8 at 2. Indeed, counsel says that they spent days attempting to contact the U.S. Attorney's Office to identify the respondents' position but heard nothing. *Id.* at 3. As for the false and implied representation regarding their client's release, they simply frame this as a matter of "clarif[ication]," rather than a total about-face. *Id.* It is hard to seriously credit counsel's assertions that a full half of their two-sentence filing—the only explanatory sentence in the filing—was a clerical oversight or error. If not dishonest, these false representations appear to be the product of sheer neglect in violation of Rule 11(b)(3).

\*     \*     \*

It is ordered, adjudged, and decreed that the petition for a writ of habeas corpus (Dkt. No. 1) is dismissed without prejudice, and the Clerk of Court is directed to close the case for statistical purposes. The Court retains jurisdiction to issue this order to show cause and, if necessary, to set a hearing concerning this order.

The Court orders counsel to show cause—on or before May 22, 2026—for why they should not be sanctioned for their conduct in this case. Counsel shall explain whether they have violated Rule 3.03 of the Texas Disciplinary Rules of Professional Conduct as well as Federal Rule of Civil Procedure 11(b)(3). Further, counsel shall explain whether, if such violations occurred, they should be sanctioned. The Court may set the matter for hearing at a later date.

So ordered on May __l__, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE